The last case on the calendar today is Appeal No. 2006A, Re Wheatley. Mr. Rhodes, please proceed. May we please the Court? My name is Kevin Rhodes of 3M Innovative Properties Company, and I represent the appellants Drs. Wheatley and Schreck. Good afternoon. Good afternoon. This is a case in which the Board has expanded the test for a prima facie obviousness rejection beyond this Court's authority. There is no authority for the Board's overgeneralization that a reference like the Izumi patents in this case that suggests replacing one material for another for a limited, very specific purpose, thereby expressly suggests the same substitution of materials even when the prior art shows that the two applications are fundamentally different and there are fundamentally different problems facing the inventors. But that's not true. I mean, you look at your page 7 of your own brief, and Izumi and the patent here seem to have somewhat similar problems. It's not just limited to the co-exclusion. Am I incorrect about that? I thought that the present patent was designed to deal with heat resistance and mechanical properties as well as the co-exclusion benefit. No, Your Honor. I think that the similarity between Izumi and the Rogers reference that was combined with Izumi and the present application, for that matter, only exists on the most superficial of levels, that they're both dealing with optical films. But beyond that superficial generality, which really divorces the context to a point of meaninglessness, there are no similarities. The Rogers reference deals with multi-layer films that are, by constructive interference, are reflective polarizers. They're very thin layers, and by a refractive index mismatch of these very thin layers, you get a transmission of rays through the film as well as the reflective polarization. Izumi, on the other hand, deals with monolithic, single-layer films. They are thousands of times thicker. Izumi does not talk about reflective polarization at all. The advantages cited in the Izumi references, let me tick them off. Heat resistance. Well, that's important in Izumi, and the differences are summarized, by the way, in the table on pages 16 and 17 of our opening brief. The heat resistance is important in Izumi because the processing temperature is much, much higher. The table in our brief talks about, on page 17, there's high temperature processing on the right-hand side of the table in Izumi. In contrast, the Rogers reference, and our application for that matter, is low temperature processing, only 30 degrees Celsius. The heat shrinkage ratio, for the same reason, is not of concern at the low temperatures that we're talking about. The mechanical properties. That relates to the degree of stretching. Well, that's very important for Izumi because the stretching, and there are record sites, again, in this table, is anywhere from 120 to 700 percent. In contrast to our application, and the Rogers reference, that was the combination, is only 3 percent. And then finally, the degree of polarization. The object in these multi-layer interference films is not just to find a material that has maximum degree of polarization. There are many materials that are much better than PDN for that purpose. It's to find the right combination of refractive indices to have a mismatch between the various layers so that you can have the constructive interference to reflect back the polarized light ray while some of it transmits through. This is not an absorbing polarizer. This is a specific kind of reflective polarizer comprised of these multiple, very tiny layers, a fraction of a wavelength of light, to get that refractive index mismatch to make the rays reflect back. Counsel, Rogers doesn't just disclose PET and use it. It actually goes further by saying other materials may obviously be used in forming the birefringent layer and should be selected to have as great a difference between the two indices of refraction as possible, blah blah blah blah blah. My understanding is if you insert PEN in instead of PET, that it's going to have a very large, a very great difference between the two indices of refraction, right? It depends on what materials are used with the PEN and the adjacent layer, how they're stretched to make them birefringent, and whether there's, because when you stretch them to make them birefringent, it can go either direction. So it might go negative in terms of refractive index. If both adjacent layers go negative, then you might not have as big of a difference. What you want is one to go positive, this positive stress coefficient, one to go negative. But Your Honor's point, that general teaching on page 185 of the appendix, and if you go to 186 where there's a more specific teaching of these materials, it's talked about the list of materials that are particularly suited because they lend themselves to this co-extrusion process, which is not taught anywhere in the Izumi patents. They're single-layer films. There is no co-extrusion. But your patent, you are very clear, is not limited to co-extrusion either, though. Your claim is not limited to co-extrusion. That's right. We're not relying on... So why isn't Izumi then kind of like your claims, or fall within, because your claim is broad enough not to be limited to co-extrusion? That's right. Our claim is not limited to co-extrusion. We're not trying to distinguish our claim from the art on the basis of co-extrusion, nor could we because Rogers teaches co-extrusion. The point is, one skilled in the art, looking to make a multi-layer film, which is what our claim requires, with these very thin layers, as it's taught in Rogers, the preferred, frankly the only viable way to make these very thin layers today, is through co-extrusion, would not look to combine that reference with a monolithic single-layer, much thicker film, that doesn't say anything about co-extrusion. There needs to be some hook, some connection to have that combination for one skilled in the art. But it doesn't have to be the connection for the same purpose, right? Doesn't our case law say that it could be for a different purpose? And Izumi suggests substituting pen for pet for a whole bunch of reasons. Does it matter? Those aren't the reasons that you might do it here? Well, I would agree. The case law certainly stands for the proposition that it doesn't have to be the particular purpose. But as those reasons, I think, illustrate that I just ran through the heat resistance and the like, there has to be some kind of hook that's relevant to the problem facing the inventor. What we have here is a rejection that just divorces it from that context. What about the degree of polarization? Well, as I said, degree of polarization in the abstract, high degree of polarization, that's what Izumi was looking for. You have a thick film, you want the light rays to go through. You're not looking in Rogers, you can search Rogers, there's no description of find the highest degree of polarization. What Rogers says is find the refractive indices of adjacent layers to get your maximum mismatch, because then you can use the fewest layers possible and get the reflective polarization back. But you're mistaken in looking at Rogers in this connection. Isn't the question what the problem confronting the inventors here was? If they wanted to improve polarization and they found that Izumi suggests that PEN has that property, isn't that a suggestion to use PEN together with Rogers? I think the problem facing the inventors clearly is in the context of Rogers. There's a multi-layer film and you want to have that refractive index mismatch. The question is what kind of a teaching would you look for to find a substitute material to put into that film? What's the problem in your view that's facing the inventors here? Well, the problem facing the inventors is to find the right combination of materials for these adjacent layers that are common materials that can be co-extruded and rendered highly birefringent with that refractive index mismatch to get the reflective polarization back. So you're looking for a material... So one of the problems is, one of the goals is to improve polarization, right? So that's what you mean about the general problem being the same as in Izumi. I don't agree that improving polarization in the abstract is a correct articulation of the problem. But certainly improving polarization in the context of this multi-layered co-extruded film was the problem. Exactly. However, that doesn't mean that in order to improve polarization of my multi-layer film, I look for a number one best polarizer for each particular layer. That's not how it's done. It's refractive polarization. But it seems to me what you're suggesting is the only time you could have an effective prima facie 103 rejection is if the patent office came up with effectively a 102 reference that showed not only the improved film, but the improved film within the multi-layered co-extruded framework. But I don't think our precedent requires that in any way, shape, or form. No, of course not. But there does require some hook in terms of the problem to be solved, the problem facing the inventor. If you look at the recent decision in the Kahn case, for example, there you're talking about a reading machine from visually impaired. And there's a reading machine that worked, but it didn't have this acoustic imaging to improve the accuracy of where the letters appear. And there's another reference, a secondary reference, that talked about acoustic imaging and it said this might be good for reading machines. There's your hook. You combine the reading machine with the acoustic imaging reference that says, hey, this might be good for reading machines. You connect them. That might be a bigger hook than you have here, but you do have a hook here. And you do have a hook because you've got a reference that not only compares PEN with PET, but suggests that PEN may have better characteristics, one of which is polarization, which is part of the problem that the inventors faced. Well, your honor, PEN certainly was not new at the time of Izumi. It was not even new at the time of Rogers. The teachings of the Izumi reference are very specific. They talk in the background section about PEN being used to replace PET in a number of different prior art contexts for electrical insulating materials, for magnetic recording tapes. But what Izumi taught was what is novel and non-obvious here is the specific use of PEN for these two particular applications in each of the two patents. So if this is so clear, why didn't you put in an affidavit from someone skilled in the art saying that no one would have been motivated to combine Izumi and Rogers for this purpose? Well, hindsight is always 20-20 in these obviousness cases, your honor, but we didn't think the board had made its prima facie case. We didn't think the examiner had made its prima facie case. We argued that in light of the differences between these properties and the nature of the references to be combined, that the prima facie case hadn't been made, and we chose to argue it on that basis. I did want— You're into your rebuttal. It's up to you whether you want to save your time. I do want to save it. Thank you. I am Joseph Piccolo, representing the director of the United States Patent and Trademark Office. As was, I think, just brought up, Wheatley could have run tests to distinguish Izumi that had, in the Izumi context, in combination with Rogers, would not work, had no success, and could have distinguished through way of evidence using test results and expert declaration that although, since everything on its face looks like that's starting with Rogers, column two, when you end with the polymer PET, and then we have two references that say pen can be used for PET, and here are five reasons why. Those six things are in both of the Izumi references. We think we established a prima facie case to at least shift the burden to Wheatley to, okay, here's the closest prior art. We're going to do some tests now, and here's our data that has come up through testing, and look, we have unexpected results here or some other secondary consideration to rebut what was established by both the board and the examiner in terms of a motivation finding being supported by substantial evidence. So, again, the five reasons in both the Izumi patents say pen is better as a polarizer of birefringent material than PET and use pen. Rogers in column two ends with a list of five polymers, PET being the last one, and it says PET can be used, and then there's an opening there that other polymers, Rogers' 1971 patent, the Izumi discoveries came around in the 1980s about pen being used for PET as a polymer for polarizing in birefringent material. Counsel, this ultimate question is one of law, but everything else is factual, and under Gart's side, we give deference to the PTO, right? Yes, Your Honor. So motivation to combine, for example, factual. So we've got to review it for substantial evidence. Yes, Your Honor. Scope and content of the prior art with these different references teach factual, right? Yes, Your Honor. Got it. So we have to give deference to the PTO on that. Yes, Your Honor. Just making sure. Okay. Inray Berg supports that about how the board of administrative patent judges and examiners are scientifically competent and skilled in their respective fields to interpret references, again, Inray Berg, as we discussed in our brief, and we think there is more than just a substantial amount of evidence here because in this case we have two patents with essentially six teachings in each. As the court brought up before, co-extrusion is not in the claim. Importance is about what the claim actually says, and basically it just differs from Rogers by pet to pen, which the Utsumi references support, and we say that's a substantial evidence to support the board's finding in this case. Wheatley puts a lot of emphasis on Inray fine, and I take it that your view is that that reliance is not so fine. Correct, Your Honor. Any comment? That Utsumi does not come close to teaching away from using pen in the Rogers context, and we would have had a problem with the prima facie case if there were such teachings in the Utsumi references about how pen, it can be substituted for pet but not in this two-layer context, which would have been a teaching away, like other cases, Gurley and other teaching away cases, you know, draw the line when there is something, and we would have considered that evidence as teaching away evidence, but here it's something less than that. If the court has no further questions, I'll take them. Thank you. Mr. Rhodes, any reply? Your Honor, with respect to the co-extrusion argument, I think it's ironic here that none of the advantages that the Board cited, the heat treatment, the mechanical stability, none of that is, not only are none of them in Claim 30, none of them are talked about in either Rogers or our patent as being of concern here, yet those are the reasons the Board said these references should be combined, and then you turn around and look at co-extrusion, which is talked about in both Rogers and our application as the preferred method of making this, and the Board said, well, we're not going to consider that because it's not in your claim. The point is, what would one skill in the art look to to make this combination? Co-extrusion is a relevant concern. These others are not. And I think in the end there's something else that's telling about the Director's argument that the substitution of Penn for PET was widely known in all of these different fields and all of these different contexts, despite the alleged general preference that the Director says in its brief was out there for Penn over PET, going back in the background of the Rogers references, going back to the 70s for various applications, there's no question here that Wheatley's use of Penn in this context, in a multi-layer birefringent interference film, was novel. There's no anticipation rejection. There was none below. This is the first time anyone has done that. Even though multi-layer films like Rogers have been around for decades. Rogers was issued in 1971. Penn had been around since the 70s, but it came until Wheatley and Schrenk did this that anyone put it together. So I think that relies on the argument that there is this widespread preference for Penn over PET as evidenced by all of the different contexts where you can find references, and it shows that the Izumi references were just a very specific use of monolithic, thick, single-layer films, where for various reasons not applicable to the multi-layer film, it was advantageous to use Penn over PET. I thank both the Council. The case is submitted. And that concludes our hearings for today. All rise.